UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

COURTNEY MORGAN, *et al*, §
§
    Plaintiffs, §
VS. § CIVIL ACTION NO. 6:17-CV-0004
§
SCOTT FRESHOUR, *et al*, §
§
    Defendants. §

## **MEMORANDUM AND ORDER**

**I.**

Before the Court are the defendants'; Mary Chapman and John Kopacz, motions to dismiss [DEs 64 and 65], the plaintiff's Courtney Morgan, second amended complaint [DE 63], the plaintiff's responses to the defendants' motions [DE 66 and 68] and the plaintiffs' reply [DE 69]. The Court has reviewed the documents, arguments presented and attachments and determines that the defendants' motions should be denied.

**II.**

On July 18, 2013, the defendants, agents of the Texas Medicaid Board ("TMB"), or the Department of Public Safety accompanied by law enforcement agents, executed administrative subpoenas on the plaintiff's medical offices at two locations in Victoria County, Texas. According to the plaintiff, he and his staff were intimidated and threatened with severe consequences if they objected or obstructed the search or fail to provide the documents described in the subpoenas. The plaintiff further asserts that he was detained in an examination room for over 40 minutes while the search was conducted. The defendants seized documents listed in the subpoenas and other unidentified documents that were not listed.

As a result of the search and seizure the defendants' caused criminal charges to be filed against the plaintiff. Felony criminal charges were brought against the plaintiff in state court. *See* [*State of Texas v. Courtney Ricardo Morgan*, (Cause No. 14-28128-A) 24th Judicial District Court, Victoria County, Texas]. On October 13, 2015, the state court, based on a motion to suppress entered findings of fact and conclusions of law concerning that motion and thereafter granted the motion. The plaintiff then filed this civil suit against the defendants, in their individual capacities, asserting malicious prosecution and abuse of process.

The defendants have not disputed the facts stated in the plaintiff's second amended complaint. Instead, they assert that the plaintiff's claims must be dismissed because he cannot overcome their claim of qualified immunity, that the plaintiff's unlawful search and seizure and abuse of process claims under 42 U.S.C. § 1983, are time-barred, the federal Constitution's 14th Amendment and Texas Constitution, Article I, Section 9 claims are inapplicable because the defendants enjoy absolute quasi-prosecutorial immunity from the plaintiff's malicious prosecution claim, alternatively, the plaintiff has failed to state a viable malicious prosecution or abuse of process claim.

**III.**

In his second amended complaint, the plaintiff asserts two causes of action – malicious prosecution and abuse of process. A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief may be granted tests the formal sufficiency of the pleadings and should be granted when and only when the suit fails to state a legally cognizable claim. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied sub com. Cloud v. United States*, 122 S. Ct. 2665 (2002). The Court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable

inferences in the plaintiff's favor. *Id.* The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Swierkiewicz v. Sorema N.A.*, 122 S. Ct. 992, 997 (2002) (quoting *Scheuer v. Rhodes*, 94 S. Ct. 1683, 1686 (1974).

Therefore, the issue before the Court is whether the plaintiff has asserted "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). This test requires more than accusation of wrong-doing. In determining the plausibility issue, a district court may consider documents attached to the plaintiff's complaint, the defendants' motion and the plaintiff's response that are central to the inquiry. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citation omitted). They are considered part of the pleadings when they are referenced. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

In his pleadings, the plaintiff asserts that the defendants' sole purpose was to compile an investigative report for purposes of prosecuting the plaintiff. Aside from the manner of appearance and show of force exhibited by the defendants and law enforcement, the seizure of documents expressly reveals the purpose involved, *i.e.*, an intent to use an administrative subpoena as a substitute for a formal search warrant. Among other things this conduct, asserts the plaintiff, constitutes an abuse of the State statute governing the issuance of administrative subpoena. Hence, such conduct constitutes an abuse of the state rights under an administrative subpoena resulting in an abuse of process (misuse) and malicious prosecution. The plaintiff cites to *See v. Seattle*, 387 U.S. 541, 545 (1967); *Club Retro LLC v. Hilton*, 568 F.3d 181, 195 (5th Cir. 2009); Texas Medical Practice Act, §§ 153.007(c), and 154.057.

## IV.

In addition to the facts set forth in his second amended complaint and responses to the defendants' motion to dismiss, the plaintiff includes the findings of fact and conclusions of law from the criminal case filed against the plaintiff. The testimony of Kopacz and Chapman was received by the state court from which findings and analysis were recorded. The defendants have not challenged those findings here or by appeal. Therefore, the Court relies on those findings and incorporates them here:

### Findings from Testimony of Agent Kopaz

The Defendant, Courtney Ricardo Morgan is a medical doctor. According to Agent Kopaz with the Texas Department of Public Safety (DPS), law enforcement received informal complaints about the defendant writing out prescriptions for scheduled drugs without "seeing" the patients. Agent Kopaz was contacted by the Texas Medical Board (TMB) to assist in the investigation. The Texas Medical Board is a regulatory agency that regulates certain physicians. The TMB has power to subpoena records of certain doctors through the Texas Occupations Code. The defendant was running a pain management clinic which falls under the authority of the TMB. According to Kopaz, when the TMB contacted the DPS, it had not begun a criminal investigation.

Kopaz had conversations with Mary Chapman an investigator with the TMB. When Agent Kopaz first spoke with the TMB, he was not aware if TMB had already begun an investigation into the defendant's practice. Agent Kopaz conducted an undercover investigation of one of the business locations owned by the defendant prior to the serving of the administrative subpoenas.

### Findings from Testimony of Mary Chapman

On July 18, 2013, DPS, TMB, the U.S. Drug Enforcement Agency (DEA) and other law enforcement agencies, served an administrative subpoena to determine if there were violations of criminal law. No search warrant was prepared to search the business of the defendant. The first location served with a subpoena was located at 302 West Rio Grande. The second location served with a subpoena was 2901 Hospital Drive. Ms. Chapman described the subpoenas as "instanter."

Ms. Chapman stated that the subpoenas were based on information which included the defendant's prescribing history and reports from media involvement. Chapman contended that prior to getting the subpoenas, she had prescribing history given to her by DPS. However, she could not recall when she received that prescribing history from DPS. According to the testimony of Ms. Chapman, the TMB had no information that the defendant's practice met the criteria of a "pill mill." For Example, there were no lines of people at the location; there were no pre-written prescription pads, and there was no evidence that it was primarily a cash business.

When the subpoenas were sought by the TMB, the TMB was not aware of the number of patients the defendant examined. In addition, the TMB was not familiar with the defendant's prescribing trends. After both locations were searched through the subpoena, medical records that contained the medical history of several patients were shared by the TMB to DPS to begin a criminal investigation.

### The State Court's Findings and Analysis

The Fourth Amendment protects individuals from searches conducted outside the judicial process, without prior approval by a judge or magistrate. *U.S. Const.4th Amend.* Searches conducted without a warrant are *per se* unreasonable ... subject only to a few specifically established and well-delineated exceptions.'" *Arizona* v. *Gant,* 556 U. S. 332, 338, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009) (quoting *Katz* v. *United States,* 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)). This rule "applies to commercial premises as well as to homes." *Marshall* v. *Barlow's, Inc.,* 436 U. S. 307, 312, 98 S. Ct. 1816, 56 L. Ed. 2d 305 (1978).

Therefore, the question before this court is whether the actions by law enforcement and the TMB are covered by the exceptions to the warrant requirement under the law. Because the medical profession is an industry that is heavily regulated by the State there is a reduced expectation of privacy. New York v. Burger, 482 U.S. 691, 702-03, 107 S. Ct. 2636 (1987). To be reasonable, the State must show that: 1. There must be a substantial government interest that gives rise to the regulatory scheme under which the search is made; 2. The warrantless search must be necessary to further the regulatory scheme; and 3. The certainty and regularity of the application of the regulatory scheme must provide an adequate substitute for a warrant. *Id.* If actions by the TMB were an administrative search pursuant to valid subpoenas the court would look to *Burger* to apply its analysis. *Id.* However, if TMB acted with the intent to promote a criminal investigation and not under its regulatory powers, then the Court will treat the actions of TMB as an extension of law enforcement.

If the TMB was acting as an agent of the government, the 4th Amendment would be violated. *Morrow v.* State, 757 S.W.2d 484, 488 (Tex. App.—Houston [1st

Dist.] 1988, pet. ref'd) (generally exclusionary rule does not apply to search and seizure of property by a private individual where there is no governmental involvement), *cert. denied,* 493 U.S. 921, 107 L. Ed. 2d 265, 110 S. Ct. 285 (1989). When a private citizen is assisting law enforcement authorities as an agent of law enforcement pursuant to a police practice, constitutional safeguards are implicated. *Paez v. State,* 681 S.W.2d 34, 36-37 (Tex. Crim. App. 1984). Any evidence seized illegally, whether by a law enforcement officer or a private citizen, is by statute subject to suppression in a criminal case. Article 38.23(a) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp. 2013).

The Texas Medical Board may issue subpoenas for the "production of books, records and documents" under the authority of §153.007 of the Texas Occupations Code. *Texas Occupations Code* §153.007 (2014); *See Also Texas Occupations Code* §602.1525 (2014). Any investigation started by the TMB shall be complete "not later than the 45th day after receiving the complaint." *Texas Occupations* Code § 154.057 (2014). Investigators working under the hospices of the Texas Occupations Code may not carry firearms. *Id.* The TMB is authorized to cooperate and assist law enforcement with a criminal investigation. *Texas Occupations* Code §164.007 (2014).

To determine whether the TMB was acting as an agent of the State, the Court should consider whether the government initiated, knew of, or acquiesced in intrusive conduct and whether the party performing the search intended to assist law enforcement efforts or to further his own ends. *See Dawson v. State,* 868 S.W.2d 363, 369 (Tex. App.--Dallas 1993, pet. ref'd). In this case, there ample evidence suggesting that the search of the defendant was either known to or requested by the police. *Dawson,* 868 S.W.2d at 369, 372 (search was illegal where club manager's search was conducted because of police officer's request); *King v. State,* 746 S.W.2d 515, 518 (Tex. App.--Dallas 1988, pet. ref'd).

Testimony during the hearing shows that the DPS contacted the TMB to make "inquires based on complaints and suspicion." *See* Reporters Record. The TMB informed DPS that they had "also received complaints from pharmacies" with regard to the defendant's actions. *See* Reporters Record. It is unclear by the testimony and evidence as to whether the TMB's investigation of the defendant was instigated because of the actions of DPS. *See* Reporters Record. However, the Court finds that there were several contacts between the TMB and DPS with regard to using the information secured as a result of the subpoena(s) to charge the defendant with a crime. The fact that a regulatory agency and law enforcement agencies are contacting each other and sharing information to conduct and coordinate a warrantless "administrative search" is a cause of concern for this Court.

In fact, the DPS used the information seized by the TMB's subpoenas to formally charge the defendant. *See* Reporters Record. The Court finds that there was an unusual show of force by law enforcement to merely serve subpoena(s). Finally, the Court finds that Chapman's testimony was evasive when repeatedly pressed about whether the TMB coordinated with law enforcement to "search" the defendant's business. Ms. Chapman's testimony was less than credible during the suppression hearing.

The Court finds that the defendant did not consent to the search of his business. The actions by the TMB and DPS (along with other law enforcement) conducted a warrantless search. The Court finds that there is a substantial government interest to search the business of the defendant. Considering the evidence presented, there is certainly a need to prohibit the prescribing of medication to patients with little or no examination by doctors. *See Texas Occupations Code.* However, the Court does not believe that the warrm1tless search of the defendant by TMB in conjunction with numerous law enforcement agencies was necessary to further the regulatory scheme. *New York v. Burger,* 482 U.S. 691, 702-03, 107 S. Ct. 2636 (1987).

The Court notes that the TMB failed to act in pursuing any action against the defendant's license until November 21, 2014. *See State's Ex.* 8. The Court believes that the intent behind the search (of the defendant) was to pursue criminal charges against tile defendant. Therefore, the search of the defendant violates the 4th Amendment of the U.S. Constitution. In addition, the actions by the TMB and law enforcement in this case do not provide a substitute for a warrant. *New York v. Burger,* 482 U.S. 691, 702-03, 107 S. Ct. 2636 (1987).
In addition, the Court notes that the defendant was immediately served with notice of the actions of the TMB to ensure that there was no judicial oversight of the search by the TMB and law enforcement. *See* Texas Occupations Code §154.056 (2014). Absent consent, exigent circumstances must exist in order for an administrative search to be constitutional. *See City of Los Angeles, California v. Patel*, No. 13-1175; 576 US __ (US Sct. 2015). The subject of the search must be afforded an opportunity to obtain pre-compliance review before a neutral decision maker. *Id.* The Court finds no exigent circumstances existed to demonstrate that the notice provided to the defendant in this case was reasonable. Further, the Courts finds that there are no facts presented that would lead to a reasonable conclusion that any evidence would have been destroyed or altered had law enforcement secured a search warrant for the business of the defendant. The Court finds that there was no valid reason why law enforcement did not secure a search warrant for the defendant's business.

Under the Fourth and Fourteenth Amendments to the United States Constitution, a search conducted without a warrant is *per se* unreasonable. *Schneckloth v. Bustamante,* 412 U.S. 218, 219, 93 S. Ct. 2041, 2043, 36 L. Ed. 2d 854 (1973). The Court believes that the State has not demonstrated the subpoenas issued in this case were valid. Therefore, because the search is per se

unreasonable, the Court needs to determine whether the defendant consent the search of his business.

Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Id.* at 219; *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). The validity of a consensual search is a question of fact, and the State bears the burden to prove by clear and convincing evidence that consent was obtained voluntarily. *Gutierrez v. State*, 221 S.W.3d 680, 686-87 (Tex. Crim. App. 2007). To determine whether the State met its burden, the Court must consider the totality of the circumstances. *Gutierrez*, 221 S.W.3d at 686-87; Maxwell v. State, 73 S.W.3d 278,281 (Tex. Crim. App. 2002).

Considering the testimony presented, the Court believes that the search of the defendant was without his consent. The Court notes that the actions of the TMB and law enforcement bordered on intimidation. It was not necessary for the service of subpoenas to display actions of intimidation such as the following: I) having several law enforcement agencies present during the search, 2) seizing of phones, 3) prohibiting filming or photographing during the service of subpoenas, and 4) prohibiting employees from talking to other employees.

For consent to be valid, it must "'not be coerced, by explicit or implicit means, by implied threat or covert force.'" *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000) (quoting *Schneckloth v. Bustamante*, 412 U.S. 218,228, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)). Consent must be given freely, unequivocally, and without duress or coercion. *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991). "The ultimate question is whether the suspect's will was overborne" by the officer's actions. *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997). Considering the totality of the circumstances surrounding the case at bar, the Court finds that the defendant did not intelligently and voluntarily consent to the search of his business.

The Court finds that the TMB acted with bad faith in partnering up with law enforcement to conduct the search of the defendant's business. The Court finds that the TMB's interest in serving the subpoenas upon the defendant was not a legitimate pursuit of its administrative authority but an exercise to circumvent both the Texas and US Constitutions' requirement for a warrant. Because the Court finds that the TMB was acting as agents of law enforcement, defendant's Motion to Suppress is hereby GRANTED.

## V.

Based on the facts presented the Court concludes that the defendants' motion to dismiss based on a failure to plead sufficient facts to support a plausible cause of action, should be

denied. The Court is also of the opinion that dismissal based on the defendants' asserted legal bases, *i.e.* qualified immunity, failure to establish elements of claims, Fourth Amendment search and seizure without consent or a search warrant, and absolute quasi-prosecutorial immunity, should be denied.

The issue here is not whether the plaintiff will prevail on any or every claim, or whether the defendants had authority to serve an administrative subpoena, as argued by the defendants. The issue(s) is whether the defendants' conduct violated "clearly established law" even in the face of statutory authority or privilege. The evidence shows that defendants entered the plaintiff's offices without a search warrant and conducted a search without the plaintiff's consent and in the absence of exigent circumstances. Clearly, the defendants were searching for contraband or other illegal activity that was presumed by them in advance of the search. This conduct presumably violated clearly established state and federal law. *See* (State Court findings and Conclusions). Case law cited by the defendants is instructive only in that the cases either addressed regulatory searches at the summary judgment stage, or when a motion to dismiss was denied. The Court concludes that the defendants' motion to dismiss the plaintiff's suit should be and it is hereby **DENIED**.

It is so Ordered.

SIGNED on this 20th day of April, 2018.

                                              _____
                                              Kenneth M. Hoyt
                                              United States District Judge