United States District Court
Southern District of Texas
**ENTERED**
September 21, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| **COURTNEY MORGAN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 6:17-CV-00004** |
| | § | |
| **MARY CHAPMAN** | § | |
| **and JOHN KOPACZ,** | § | |
| | § | |
| **Defendants.** | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

On July 18, 2013, "a team of law enforcement officers and Medical Board investigators locked down [Plaintiff Courtney Morgan's] clinic, rifled through private patient records, and seized confidential files." *Morgan v. Chapman*, 969 F.3d 238, 241 (5th Cir. 2020). As a result, Morgan was indicted on "trumped-up charges of running a pill mill" that were later dismissed by a state district court. *Id.* Morgan now "brings a civil suit agents two government agents for violating his constitutional rights." *Id.*

Pending before the Court are two Motions to Dismiss filed by Defendants Mary Chapman and John Kopacz. After the Fifth Circuit remanded the case, this Court granted Plaintiff Courtney Morgan leave to amend his complaint. Morgan, a physician, now asserts claims under 42 U.S.C. § 1983 arising out of the use of an *instanter* subpoena to search his medical facilities in 2013. The documents obtained from the 2013 search resulted in an indictment and Morgan's arrest. Chapman and Kopacz move to dismiss under Rule 12(b)(6). Both raise statute of limitations, but only Chapman asserts qualified

immunity.  For the reasons that follow, the Court concludes that Chapman is entitled to qualified immunity as to the Fourth Amendment unreasonable seizure claim, but all other claims survive.

## I.   BACKGROUND

### A.   FACTUAL ALLEGATIONS

The following allegations are from the Third Amended Complaint.[1]  (Dkt. No. 110).  This case arises out of the arrest of Morgan, a licensed physician, and the search of his family medical practices in 2013 under an administrative *instanter* subpoena.[2]  The search was authorized by the Texas Medical Board and led by one of its agents— Chapman.  While serving the subpoena, Chapman was aided by Kopacz, a law enforcement officer with the Texas Department of Public Safety.  Chapman and Kopacz executed the *instanter* subpoena for the purpose of conducting a criminal investigation of Morgan.

After seizing several documents from Morgan's family medical practices, including some that were not listed in the subpoena, Chapman compiled an investigative report.  Chapman deliberately falsified information in his report with the purpose to mislead, while Kopacz concealed exculpatory evidence.  After receiving the seized documents and investigative report, the District Attorney indicted Morgan for violating

---

[1]     Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court evaluates the pleadings by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Hutcheson v. Dall. Cnty.*, 994 F.3d 477, 481–82 (5th Cir. 2021).

[2]     An *instanter* subpoena does not allow for court review and demands immediate compliance. *Morgan v. Chapman*, 969 F.3d 238, 241 (5th Cir. 2020).  *Instanter* subpoenas are generally unconstitutional.  *Id.*

Section 162.152 of the Texas Occupations Code. Based on the way the report was compiled, including the deliberate exclusion of relevant information, Chapman purposefully led the District Attorney to believe that Morgan was operating an uncertified pain management clinic. Chapman's report was the sole evidence used to support Morgan's indictment.

Following his arrest, Morgan moved to suppress the evidence in his state-court proceedings. The state court made findings that were critical of Chapman's testimony and the search of Morgan's facilities and granted the motion to suppress. The charge against Morgan was later dismissed in January 2016.

### B.   PROCEDURAL HISTORY

One month after the charge against him was dismissed, Morgan filed this lawsuit in federal court. (Dkt. No. 1). Morgan amended his complaint twice. (Dkt. No. 39); (Dkt. No. 63). In the Second Amended Complaint, Morgan generally asserted claims under Section 1983 for malicious prosecution and abuse of process. (Dkt. No. 63 at ¶¶ 71–121). Chapman and Kopacz moved to dismiss, but Judge Kenneth M. Hoyt concluded that they were not entitled to qualified immunity. (Dkt. No. 75). Chapman and Kopacz filed an interlocutory appeal. (Dkt. No. 78).

The Fifth Circuit reversed. *Morgan v. Chapman*, 969 F.3d 238 (5th Cir. 2020). It held that Chapman and Kopacz were entitled to qualified immunity because "malicious prosecution and abuse of process are not viable theories of *constitutional* injury." *Id.* at 241 (emphasis added). Instead, malicious prosecution and abuse of process are torts. *Id.* at 245. But the Fifth Circuit also concluded that it would *not* be futile for Morgan to assert

a due process claim or a claim for unreasonable search or seizure. *Id.* at 250. It remanded to allow this Court to consider providing Morgan another opportunity to amend his complaint. *Id.*

Morgan promptly moved for leave to amend. (Dkt. No. 98). Chapman and Kopacz opposed the amendment. (Dkt. No. 101); (Dkt. No. 102). The Court granted Morgan's request. (Dkt. No. 108). The Third Amended Complaint is now the live pleading. (Dkt. No. 110).

The Third Amended Complaint asserts claims against Chapman and Kopacz in their individual capacities. (Dkt. No. 110 at 2). Those claims include: (1) unreasonable search under the Fourth Amendment against both Chapman and Kopacz; (2) unreasonable seizure under the Fourth Amendment against both Chapman and Kopacz; and (3) violation of due process under the Fourteenth Amendment against Chapman. (*Id.* at 14–28). Morgan seeks monetary damages, costs, interest, and attorney's fees. (*Id.* at 1, 28).

Chapman and Kopacz once again move for dismissal. (Dkt. No. 111); (Dkt. No. 112). Morgan is opposed. (Dkt. No. 118); (Dkt. No. 119).

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it

demands more than labels and conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)).

Rule 12(b)(6) dismissals are generally disfavored.  *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); *Boudreaux v. Axiall Corp.*, 564 F. Supp. 3d 488 (W.D. La. 2021). In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept the plaintiff's factual allegations as true and view those allegations in the light most favorable to the plaintiff.  *White v. U.S. Corrections, L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021).  The court must evaluate whether "a complaint contains sufficient factual matter to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Thus, a court should dismiss when the live pleading fails to "raise a right to relief above the speculative level."  *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010).

## III.   DISCUSSION

Kopacz raises a single ground for dismissal: the Fourth Amendment claims are time barred.  (Dkt. No. 111 at 2–5).  Chapman similarly argues that all claims are time barred.  (Dkt. No. 112 at 20–22)  But she further argues that, even so, she is entitled to qualified immunity and the Fourteenth Amendment does not apply.  (Dkt. No. 112 at 10–

20).  The Court begins with the statute of limitations because Chapman and Kopacz both raise it.  *See, e.g.*, *Arnone v. Syed*, No. 3:17-CV-03027-E, 2020 WL 2085594, at *3–4 (N.D. Tex. Apr. 30, 2020).

### A.    STATUTE OF LIMITATIONS

Kopacz and Chapman both argue that the statute of limitations for Morgan's Fourth Amendment claims began to accrue on July 18, 2013, when the alleged unreasonable search and seizure occurred.  (Dkt. No. 111 at 3–5); (Dkt. No. 112 at 20–22).  In response, Morgan raises two arguments.  First, as to his unreasonable seizure claims, Morgan argues that the claims did not begin to accrue until the charges were dismissed.  (Dkt. No. 118 at 4–6).  Second, as to his unreasonable search claims, Morgan argues that he asserts a viable theory of tolling.  (*Id.* at 4–7).

The statute of limitations is an affirmative defense.  Fed. R. Civ. P. 8(c)(1).  Thus, dismissal under Rule 12(b)(6) for a time barred claim "is proper only where it is evident from the complaint that the action is barred and the complaint fails to raise some basis for tolling."  *Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 998 F.3d 190, 200 (5th Cir. 2021) (cleaned up).  Put differently, the live pleading must show "beyond doubt" that the plaintiff cannot overcome the statute of limitations defense.  *See Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022).  The Fifth Circuit "will remand if the plaintiff has pleaded facts that justify equitable tolling."  *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015) (internal quotation marks omitted).

Morgan's claims are brought under 42 U.S.C. § 1983. Section 1983 "provides a cause of action against persons who, under color of state law, deprive him 'of any rights, privileges, or immunities secured by the Constitution.'" *Morgan*, 969 F.3d at 245 (quoting 42 U.S.C. § 1983). The rights secured by the Constitution that were violated, according to Morgan, are grounded in the Fourth and Fourteenth Amendments.

"Section 1983 claims are subject to a state's personal injury statute of limitations." *Reed v. Goertz*, 995 F.3d 425, 431 (5th Cir. 2021). In Texas, the statute of limitations for personal injury claims is two years. Tex. Civ. Prac. & Rem. Code § 16.003(a). "Although state law provides the limitations period for a section 1983 claim, federal law determines when the claim accrues." *Turnage v. Britton*, 29 F.4th 232, 244 (5th Cir. 2022).

The Fifth Circuit did not consider whether Morgan's claims were timely, instead noting that the statute of limitations was "outside of the scope" of the appeal. *Morgan*, 969 F.3d at 250. This Court, too, acknowledged that Chapman and Kopacz could raise the statute of limitations after Morgan amended his complaint. (Dkt. No. 108 at 11 n.7). Now that Morgan has amended his complaint following remand, the Court considers timeliness. Because the "accrual analysis begins with identifying the specific constitutional right alleged to have been infringed," *McDonough v. Smith*, ____ U.S. ____, ____, 139 S.Ct. 2149, 2155, 204 L.Ed.2d 506 (2019) (cleaned up), the Court will separately analyze each claim.

### a.      Unreasonable Seizure: Chapman and Kopacz

The Court begins with Morgan's claims for unreasonable seizure under the Fourth Amendment. Morgan describes these unreasonable seizure claims against Chapman and

Kopacz as "analogous to malicious prosecution." (Dkt. No. 110 at 17–19, 23–25). Chapman and Kopacz argue that the unreasonable seizure claims are *not* analogous to malicious prosecution. (Dkt. No. 112 at 21–22); (Dkt. No. 123 at 3–9). Resolving this disagreement is material because it will determine when the claim began to accrue.

"In defining the contours and prerequisites of a § 1983 claim, including its rule of accrual, courts are to look first to the common law of torts." *Winfrey v. Rogers*, 901 F.3d 483, 492 (5th Cir. 2018) (quoting *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 137 S. Ct. 911, 920, 197 L. Ed. 2d 312 (2017) (internal quotation marks omitted)). A court should first determine whether the claim "more closely resembles one for false imprisonment or one for malicious prosecution." *Winfrey*, 901 F.3d at 492. An unlawful detention under legal process, as opposed to "detention with no legal process," is most analogous to malicious prosecution. *See id.* at 493. Here, as the live complaint shows, Morgan complains about an unlawful detention under legal process.

Morgan asserts two claims for "unreasonable seizure in violation of the 4th Amendment analogous to malicious prosecution"—one against Chapman and the other against Kopacz. (Dkt. No. 110 at 17, 23). The substance of the pleading confirms that the title—malicious prosecution—is correct. Morgan alleges that Chapman and Kopacz worked together to pursue a criminal charge against him. (*Id.* at 17–18). The prosecution started when Kopacz asked for the Texas Medical Board investigative file on Morgan, including records from the 2013 search. (*Id.* at 17). Even though Chapman knew the report was inaccurate, she gave that investigative file to Kopacz and told Kopacz that she would testify against Morgan. (*Id.* at 23).

8

Kopacz then delivered the investigative file on Morgan to the District Attorney's Office and suggested which charge to bring against Morgan.  (*Id.* at 17).  Morgan was indicted on or around August 14, 2014 and arrested approximately two weeks later.  (*Id.* at 17, 23).  Morgan's arrest was the unreasonable seizure.  (*Id.* at 17, 24).  The indictment was the legal process that resulted in Morgan's pretrial arrest on August 28, 2014.  (*Id.* at 17).

Notwithstanding the legal process involved in securing an indictment, Morgan alleges that the entire prosecution lacked probable cause.  (*Id.* at 17–18).  In fact, Kopacz and Chapman *knew* Morgan was innocent.  (*Id.* at 18, 24).  Still, Kopacz and Chapman provided sworn testimony in support of Morgan's prosecution.  (*Id.* at 17–18, 24).  They further made material misstatements and omissions of fact—all with the purpose of facilitating Morgan's prosecution.  (*Id.* at 18, 24).  Kopacz even "withheld exculpatory evidence."  (*Id.* at 18).  Without Kopacz and Chapman's involvement, Morgan would not have been prosecuted and, by extension, seized under the Fourth Amendment.  (*Id.* at 18, 24).

Kopacz disagrees, raising three main arguments.  First, he focuses on the *instanter* subpoena, which he argues is not detention pursuant to legal process.  (Dkt. No. 123 at 5–6).  But Morgan's Fourth Amendment seizure claim is premised on his detention resulting from the *indictment*, not detention for failing to comply with the *instanter* subpoena.  *See* (Dkt. No. 118 at 5).

Second, Kopacz argues that Morgan failed to allege "that he suffered pretrial detention or any deprivation of rights separate from his prosecution."  (Dkt. No. 123 at

7).  Yet this ignores that Morgan focuses on his pretrial arrest on August 28, 2014 and subsequent detention.  While it remains unclear whether Morgan was detained up until the moment that the state court dismissed the charges against him, this observation does not change the plausibility of Morgan's theory at the Rule 12(b)(6) stage.  *See Winfrey*, 901 F.3d at 492–493.

Finally, Kopacz invites the Court to read *Winfrey* as applying to "an arrest warrant affidavit containing material omissions or misstatements."  (Dkt. No. 123 at 8).  True, *Winfrey* involved "an arrest pursuant to a warrant, issued through the normal legal process, that is alleged to contain numerous material omissions and misstatements."  901 F.3d 493.  But the inquiry is whether a claim under Section 1983 more closely resembles malicious prosecution because it "is based upon detention accompanied by wrongful institution of *legal process*."  *Id.* at 492 (cleaned up) (emphasis added).  Legal process—not a warrant—is the focal point.  *See id.*  That the Fifth Circuit found a warrant constitutes legal process says nothing about whether a warrant is the *only* way to show legal process.

In sum, considering these factual allegations as a whole, the Court finds that Morgan's Fourth Amendment claim for unreasonable seizure most closely resembles one for malicious prosecution.  *See Winfrey*, 901 F.3d at 492.  Morgan's detention was "accompanied by wrongful institution of legal process"—here, an indictment.  *See id.*

Having recognized the claim is one for malicious prosecution under the Fourth Amendment, the Court next turns to when the claim accrued.  A claim for malicious prosecution under the Fourth Amendment "does not accrue until the prosecution ends in the plaintiff's favor."  *Id.*  More recently, the Supreme Court noted that a plaintiff can

assert a Fourth Amendment claim for malicious prosecution if, among other requirements, the plaintiff has "obtained a favorable termination of the underlying criminal prosecution." *Thompson v. Clark*, 596 U.S. ____, ____, 142 S.Ct. 1332, 1335, 212 L.Ed.2d 382 (2022). The Supreme Court then held that a favorable termination includes a showing that the plaintiff's "prosecution ended without a conviction." *Id.*

Under these directions, the Court holds that Morgan's Fourth Amendment claim for unreasonable seizure began to accrue on January 20, 2016 when his charges were dismissed. Morgan alleges that he was indicted in August 2014. (Dkt. No. 110 at 9). In October 2015, a state court granted Morgan's motion to suppress. (*Id.* at 10–12). The prosecutor then moved to dismiss the charge. (*Id.* at 12). On January 20, 2016, the state court granted the request and dismissed the charge against Morgan. (*Id.*). At this point, his "prosecution ended without a conviction." *See Thompson*, 596 U.S. at ____, 142 S.Ct. at 1335. January 20, 2016, then, is when the two-year statute of limitations began to tick. A year later, Morgan filed this lawsuit. (Dkt. No. 1). This is within the two-year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code § 16.003(a). The Court therefore holds that the Fourth Amendment claim for unreasonable seizure is not time barred.

### b.   Due Process Clause: Chapman

Next, the Court considers whether Morgan's due process claim against Chapman is timely. Chapman analogizes the claim to abuse of process, contending that the statute of limitations began to run when the subpoena was served in 2013. (Dkt. No. 112 at 21–22). In response, Morgan asserts that his claim—one for fabricated evidence rather than

abuse of process—is timely because it started to accrue when the criminal proceeding was terminated in his favor.  (Dkt. No. 119 at 13–14).  The Court agrees with Morgan.

Morgan's claim against Chapman for "deliberately fabricating evidence and using it to frame and bring false charges against Morgan," (Dkt. No. 110 at 25) falls under the Fourteenth Amendment's Due Process Clause.  The Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

A claim under the Due Process Clause for fabricated evidence is cognizable under existing precedent.  In *McDonough v. Smith*, for example, the Supreme Court held that the limitations period for the plaintiff's fabricated evidence claim began to run *after* the plaintiff was acquitted.  ____ U.S. at ____, 139 S.Ct. at 2153.  In particular, the plaintiff's claim sought to "vindicate a right not to be deprived of liberty as a result of the fabrication of evidence by a government officer."  *Id.* at ____, 139 S.Ct. at 2155 (cleaned up).  After assuming without deciding that the Second Circuit properly treated the claim as arising under the Due Process Clause and articulated "the right at issue and its contours," the Supreme Court agreed that "malicious prosecution is the most analogous common-law tort here."  *Id.* at ____, 139 S.Ct. at 2155–56.  This conclusion flowed from the recognition that the plaintiff's fabricated evidence claim "require[d] him to show that the criminal proceedings against him—and consequent deprivations of his liberty—were caused by [the defendant's] malfeasance in fabricating evidence."  *Id.* at ____, 139 S.Ct. at 2156 (footnote omitted).  Further, the fabricated evidence claim challenged the criminal prosecution that was taken under legal process.  *Id.*  Thus, the Supreme Court concluded,

the plaintiff "could not bring his fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution." *Id.*

Here, Morgan's claim is substantially similar to that in *McDonough*. First, like *McDonough*, Morgan's claim is grounded in the Due Process Clause. (Dkt. No. 110 at 25–28). Second, similar to *McDonough*, Morgan's claim is grounded in the alleged fabrication of evidence by a government official—Chapman's inaccurate report regarding prescriptions Morgan issued. (*Id.* at 25 ¶ 124). Finally, as in *McDonough*, Morgan's claim seeks to show that the criminal proceedings brought against him were caused by Chapman fabricating evidence. (*Id.* at 26 ¶¶ 127–29). In light of *McDonough,* Morgan's claim under the Due Process Clause did not begin to run until the favorable termination of his prosecution. *See McDonough*, ____ U.S. at ____, 139 S.Ct. at 2156. The two-year clock, therefore, started ticking in January 2016 when the charges against Morgan were dismissed. (Dkt. No. 110 at 12). Therefore, the Court holds that Morgan's claim under the Due Process Clause is timely because he filed it one year into the two year limitations period.

c.    Unreasonable Search: Chapman and Kopacz

Finally, the Court turns to Morgan's unreasonable search claims against Chapman and Kopacz. Chapman argues these claims began to accrue in 2013 and are untimely. (Dkt. No. 112 at 20–22). Kopacz agrees. (Dkt. No. 111 at 5). In response, Morgan assumes for the sake of argument that his unreasonable search claims were brought outside the two-year statute of limitations. (Dkt. No. 119 at 16). But he argues that the statute of

limitations should be tolled. (*Id.* at 16–21). Kopacz disagrees. (Dkt. No. 123 at 9–12). The Court finds that Morgan has asserted a viable tolling theory at this stage.

As a general rule, a "claim accrues when the would-be plaintiff knows or has reason to know that he has been hurt and who has inflicted the injury." *Turnage*, 29 F.4th at 244 (cleaned up). Here, Morgan knew that he was injured and who inflicted the injury as early as July 18, 2013. On that day, Chapman and Kopacz knowingly and intentionally searched Morgan's medical offices using an *instanter* subpoena. (Dkt. No. 110 at 14–15, 19–20). This is the same search that Morgan claims was warrantless, without his consent, and against his will. (*Id.* at 15, 19–20). As such, the claims began to accrue in 2013. *See Moore v. McDonald*, 30 F.3d 616, 620–621 (5th Cir. 1994); *Humphreys v. City of Ganado*, 467 F.App'x 252, 255–256 (5th Cir. 2012) (per curiam).

Because Morgan's Fourth Amendment claims for an unreasonable search began accruing in 2013, his claims are untimely unless tolling applies. In this respect, Morgan advances a fraudulent concealment theory in support of tolling.[3] (Dkt. No. 119 at 16–21).

Texas's state-law tolling provisions apply to this case. *Bargher v. White*, 928 F.3d 439, 444 (5th Cir. 2019) ("The forum state's applicable tolling provisions are also given full effect."). These tolling provisions include fraudulent concealment, which "is a fact-specific equitable doctrine." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015). Proof of fraudulent concealment "suspend[s] the running of limitations until such time as the

---

[3]   Kopacz improperly characterizes Morgan's fraudulent concealment theory as an independent claim. (Dkt. No. 123 at 9–10). But it is a theory, not a separate claim for relief. *Cf. Middaugh v. InterBank*, 528 F. Supp. 3d 509, 539–540 (N.D. Tex. 2021) (finding no authority for the proposition that a tolling argument must be affirmatively plead in the complaint).

plaintiff learned of, or should have discovered, the deceitful conduct or the facts giving rise to the cause of action." *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999). To show fraudulent concealment, a plaintiff must demonstrate "that the 'defendant [1] actually knew the plaintiff was in fact wronged, and [2] concealed that fact to deceive the plaintiff.'" *ExxonMobil Corp. v. Lazy R Ranch, LP*, 511 S.W.3d 538, 544 (Tex. 2017) (quoting *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011)).

The question the first element of fraudulent concealment asks is whether Chapman and Kopacz "actually knew" that Morgan "was in fact wronged." *ExxonMobil Corp.*, 511 S.W.3d at 544. To answer that question, Morgan points to his factual allegations. (Dkt. No. 119 at 17). Those allegations begin by asserting that the state court judge who presided over Morgan's prosecution found that Chapman and Kopacz conducted a warrantless search with the explicit purpose of pursuing criminal charges against Morgan. (Dkt. No. 110 at 11 ¶ 56). The factual allegations quote findings that Chapman's testimony was "evasive" and "less than credible"; the subpoena was served in a way to avoid judicial oversight; and the search lacked consent. (*Id.* at 11 ¶ 57). Morgan further alleges that he "and his staff were told that they could not refuse to comply with the *instanter* subpoena." (*Id.* at 7–8 ¶ 40). While it was Chapman who physically served the *instanter* subpoena, (*id.* at 6 ¶ 32), both Chapman and Kopacz worked together in serving it. (*Id.* at 5 ¶ 27). Read together, these factual allegations plausibly allege that Chapman and Kopacz actually knew that Morgan was wronged by the use of the *instanter* subpoena. *See ExxonMobil Corp.*, 511 S.W.3d at 544. As the Fifth Circuit explained, "those subpoenas—which do not allow for court review and demand

immediate compliance—are unconstitutional." *Morgan*, 969 F.3d at 241.  Morgan plausibly alleges the first requirement for fraudulent concealment.

The second requirement for fraudulent concealment asks whether Chapman and Kopacz concealed the fact that Morgan was wronged with the purpose of deceiving him. *ExxonMobil Corp.*, 511 S.W.3d at 544.  For this inquiry, Morgan again points to his factual allegations, this time to show that Chapman and Kopacz deliberately mischaracterized and concealed the fact that there was no exigency at the time of the search.  (Dkt. No. 119 at 17–19).  Morgan also points to the state-court suppression hearing.  (*Id.* at 19).

During the state-court hearing on the motion to suppress, Chapman deceitfully portrayed Morgan's medical facility "as an illegitimate medical practice," (Dkt. No. 110 at 9 ¶ 52), by, for example, stating "that no complete patient medical records were located at" the medical facility—even though Chapman knew those records could be accessed electronically, (*id.* at 22 ¶ 109).  Further, while Chapman testified that law enforcement did not seize records that were not listed in the *instanter* subpoena, the Texas Medical Board's records log shows that hundreds of pages were seized even though they were outside the scope of the subpoena.  (*Id.* at 10 ¶ 53).  Chapman then concealed the unlawful seizure of documents.  (*Id.*).  Kopacz also possessed exculpatory evidence but withheld it in violation of a court order.  (*Id.* at 11 ¶ 55).

It was not until the September 2015 state court hearing that Morgan first became aware of the factual basis to support the alleged exigency that was used to demand immediate compliance with the *instanter* subpoena.  (*Id.* at 22 ¶ 109).  Indeed, Texas Medical Board investigative files are generally confidential under Texas law.  Tex. Occ.

Code § 164.007(c).[4]  As a result, Morgan had no way of knowing about the precise nature of the *instanter* subpoena until hearing the evidence presented at the suppression hearing.[5]  *Cf. Texas v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1533 (5th Cir. 1988) ("[E]ven though a plaintiff might have inquiry notice of a potential claim, it does not necessarily follow that reasonable diligence will discover sufficient facts to support legal action.").

The evidence at the suppression hearing revealed that there was no exigency excusing the use of an *instanter* subpoena without procedural safeguards.  At the time of the search, Morgan was told that he and his staff could not refuse to comply with the *instanter* subpoena.  (Dkt. No. 110 at 7–8 ¶¶ 39–40).  Yet the state court judge evaluated the evidence presented at the suppression hearing and found Chapman to be "evasive" and "less than credible" before ultimately granting the motion to suppress.  (*Id.* at 11–12 ¶¶ 57–59).  Rather than a "legitimate pursuit of its administrative authority," Chapman used the *instanter* subpoena "to circumvent both the Texas and US Constitutions' requirements for a warrant."  (*Id.* at 11 ¶ 58).  Perhaps most relevant was the state court's conclusion that "no exigent circumstances existed at the time the subpoenas were

---

[4]   "Each . . .  investigation file . . . is privileged and confidential and is not subject to discovery, subpoena, or other means of legal compulsion for release to anyone other than the board or its employees or agents involved in discipline of a license holder."  Tex. Occ. Code § 164.007(c).

[5]   Kopacz argues that the basis of the claim could have been discovered on the day of the search and that Morgan should have known the *instanter* subpoena was unlawful.  (Dkt. No. 123 at 11).  At the very least, Kopacz explains, Morgan would have known of the injury on the date he filed the motion to suppress.  (*Id.*).  Both theories are unpersuasive.  As the Court explains, the nature of the violation was undiscoverable until the suppression hearing.

served." (*Id.* at 11 ¶ 57). Exigency is relevant because it is required to demand immediate compliance with an *instanter* subpoena. As the Texas Administrative Code makes clear,

> Upon the request by the board or board representatives, a licensee shall furnish to the board copies of medical records or the original records within a reasonable time period, as prescribed at the time of the request. "Reasonable time," as used in this section, shall mean fourteen calendar days or a *shorter time if required by the urgency of the situation* or the possibility that the records may be lost, damaged, or destroyed.

22 Tex. Admin. Code § 179.4(a) (emphasis added).

By demanding immediate compliance with the *instanter* subpoena and withholding information regarding the exigency until the suppression hearing, the Court concludes that Morgan plausibly alleges the second requirement for fraudulent concealment. *See ExxonMobil Corp.*, 511 S.W.3d at 544; *see also Hunton Energy Holdings, LLC v. HL Seawater Holdings, LLC*, 539 F. Supp. 3d 685, 692 (S.D. Tex. 2021) (holding that the complaint "plausibly alleges" fraudulent concealment).

Recall that at the Rule 12(b)(6) stage, the live pleading must show "beyond doubt" that Morgan cannot overcome the statute of limitations defense. *See Bell*, 27 F.4th at 320. It does not. Because Morgan has plausibly alleged that he could not have discovered the unlawful conduct until the September 2015 hearing, Chapman and Kopacz have not shown beyond doubt that the statute of limitations bars the claim. Again, Morgan filed this lawsuit in January 2017—less than two years after the September 2015 hearing.

***

In sum, Chapman and Kopacz have not carried their burden of showing that Morgan's claims are untimely. *See Acad. of Allergy & Asthma*, 998 F.3d at 200 ("Defendants bear the burden of proof on the statute of limitations defense."). Thus, the Court turns to qualified immunity.

### B.   QUALIFIED IMMUNITY

Chapman argues she is entitled to qualified immunity as to all three claims asserted against her. (Dkt. No. 112 at 10–17). Kopacz, by contrast, does not assert qualified immunity.

Qualified immunity, if properly asserted, protects state officials performing discretionary functions from liability for civil damages. *Buehler v. Dear*, 27 F.4th 969, 981 (5th Cir. 2022). "To defeat the defense of qualified immunity at the motion to dismiss stage, [the plaintiff] must plausibly allege [1] a violation of a constitutional right that [2] was clearly established at the time of the purported violation." *Morgan*, 969 F.3d at 245. "Courts have discretion to decide the order in which to engage these two prongs." *Tolan v. Cotton*, 572 U.S. 650, 656, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014). The plaintiff bears the burden of showing qualified immunity does not apply. *Mayfield v. Currie*, 976 F.3d 482, 486 (5th Cir. 2020).

To be clearly established, a right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam) (internal quotations omitted). Further, "the clearly established right must be defined with specificity." *City of Escondido v. Emmons*, ____ U.S. ____, ____, 139 S.Ct. 500, 503, 202

L.Ed.2d 455 (2019).  While a plaintiff need not point to "a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Rivas-Villegas v. Cortesluna*, ____ U.S. ____, ____, 142 S.Ct. 4, 7–8, 211 L.Ed.2d 164 (2021) (per curiam).  The inquiry "is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, ____ U.S. ____, ____, 138 S.Ct. 1148, 1152, 200 L.Ed.2d 449 (2018) (per curiam) (internal quotation marks omitted).

The Court will first analyze Morgan's Fourth Amendment claims before turning to the single claim under the Fourteenth Amendment.

### 1.   <u>Fourth Amendment</u>

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"  U.S. Const. amend. IV.  "As that text makes clear, the ultimate touchstone of the Fourth Amendment is reasonableness." *Lange v. California*, ____ U.S. ____, ____, 141 S.Ct. 2011, 2017 (2021) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 1947, 164 L.Ed.2d 650 (2006)).  "The Fourteenth Amendment ensures that the same protection runs against state officials." *Morgan*, 969 F.3d at 245.  Morgan takes issue with both a search and a seizure.

### a.   <u>Unreasonable Search</u>

First, the search.  Morgan's claim under the Fourth Amendment for unreasonable search against Chapman is predicated on the 2013 search of Morgan's medical facilities under the *instanter* subpoena.  (Dkt. No. 110 at 19–22).  Morgan argues that, at the time of

the search, there was a clearly established right to be free from a warrantless search without an opportunity for precompliance review.  (Dkt. No. 119 at 14–16).

The text of the Fourth Amendment guarantees the right to be free from unreasonable searches.  U.S. Const. amend. IV.  "The Founding generation crafted the Fourth Amendment as a response to the reviled general warrants and writs of assistance of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity." *Carpenter v. United States*, ____ U.S. ____, ____, 138 S.Ct. 2206, 2213, 201 L.Ed.2d 507 (2018) (internal quotation marks omitted). It should be no surprise, then, that "warrantless searches are *per se* unreasonable under the Fourth Amendment" other than "a few specifically established and well-delineated exceptions." *City of Ontario v. Quon*, 560 U.S. 746, 760, 130 S.Ct. 2619, 2630, 177 L.Ed.2d 216 (2010) (internal quotation marks omitted).

One of the "few specifically established and well-delineated exceptions" to the *per se* rule, *see City of Ontario*, 560 U.S. at 760, 130 S.Ct. at 2630, is an administrative search. *Camara v. Mun. Court of City & Cnty. of San Francisco*, 387 U.S. 523, 534, 87 S.Ct. 1727, 1733, 18 L.Ed.2d 930 (1967).  Administrative searches are appropriate "where special needs make the warrant and probable-cause requirement impracticable and where the primary purpose of the searches is distinguishable from the general interest in crime control." *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 420, 135 S.Ct. 2443, 2452, 192 L.Ed.2d 435 (2015) (cleaned up).  As a general rule, "in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *Id.*

There is also a second exception.  Closely regulated industries can be searched without a warrant and without precompliance review.  *Cotropia v. Chapman*, 978 F.3d 282, 286 (5th Cir. 2020) (hereinafter *Cotropia II*).  This is because closely regulated industries have "no reasonable expectation of privacy."  *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313, 98 S.Ct. 1816, 1821, 56 L.Ed.2d 305 (1978).  Nonetheless, closely regulated industries have some protection.  As the Supreme Court explained in *New York v. Burger*, "warrantless inspections in closely regulated industries must still satisfy three criteria: (1) a substantial government interest, (2) a regulatory scheme that requires warrantless searches to further the government interest, and (3) a constitutionally adequate substitute for a warrant." *Zadeh v. Robinson*, 928 F.3d 457, 464–65 (5th Cir. 2019) (quoting *New York v. Burger*, 482 U.S. 691, 702–03, 107 S.Ct. 2636, 2643–44, 96 L.Ed.2d 601 (1987)) (internal quotation marks omitted).

The Fifth Circuit had these principles in mind when it considered whether any unreasonable search claim would be futile.  *See Morgan*, 969 F.3d at 248–49.  In examining futility, it also recounted the two "cases involving the Texas Medical Board's unconstitutional use of *instanter* subpoenas."  *Id.* at 248.  The first case was *Cotropia v. Chapman*, a 2018 decision denying qualified immunity to Chapman—the same defendant in this case—after she "searched and seized patient medical records over a physician's objection."  *Id.* (citing 721 F. App'x 354, 357, 361 (5th Cir. 2018) (per curiam) (hereinafter *Cotropia I*)).  The plaintiff, who was a physician, operated the pain management clinic that Chapman searched.  *Cotropia I*, 721 F. App'x at 356.  The Fifth Circuit denied qualified immunity to Chapman because the physician-plaintiff "plausibly alleged that Chapman

'violated the clearly established right to an opportunity to obtain precompliance review of an administrative subpoena before a neutral decisionmaker.'"  *Morgan*, 969 F.3d at 248 (quoting *Cotropia I*, 721 F. App'x at 357).  It then reversed and remanded.

After remand, the district court adopted the magistrate judge's recommendation to grant Chapman qualified immunity.  The magistrate judge noted that the Fifth Circuit did not consider Chapman's argument that precompliance review was not required because the *Burger* exception for closely regulated industries applied.  *Cotropia v. Chapman*, No. 4:16-CV-00742, 2019 WL 4346500 at *2 (S.D. Tex. Aug. 21, 2019), *report and recommendation adopted*, 2019 WL 4331216 (S.D. Tex. Sept. 12, 2019).  The magistrate judge, however, considered that argument and observed that "it was not until August 31, 2018, when the [Fifth Circuit] issued its first opinion in *Zadeh*, that the [Texas Medical Board] and its employees were put on notice that its *instanter* subpoena process fell outside" the exception for closely regulated industries.  *Id.* at *5 (citing *Burger*, 482 U.S. at 691, 107 S.Ct. at 2636; *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629 (5th Cir. 2000)).  Because "the law was not clearly established in 2015 when Chapman served the instanter subpoena on Cotropia," Chapman was entitled to qualified immunity.  *Id.*

The Fifth Circuit affirmed.  While the administrative subpoena issued to search a pain management clinic was unconstitutional, the Fifth Circuit concluded that a reasonable official would not have known that at the time of the search.  *Cotropia II*, 978 F.3d at 287.

The second opinion the Fifth Circuit discussed before remanding this case was *Zadeh v. Robinson*, a 2019 decision that awarded qualified immunity to a Texas Medical

Board investigator but nonetheless held that the "investigator violated a physician's Fourth Amendment rights by executing an *instanter* subpoena without precompliance review." *Morgan*, 969 F.3d at 248 (citing *Zadeh*, 928 F.3d at 464).   In reaching this conclusion, the Fifth Circuit rejected the argument that "the medical industry as a whole" falls within the "closely regulated industry" exception, which would excuse the warrantless search. *Morgan*, 969 F.3d at 248–49 (citing *Zadeh*, 928 F.3d at 464, 466).   The Fifth Circuit then "assumed without deciding that pain management clinics were closely regulated and that the plaintiff was operating such a clinic." *Morgan*, 969 F.3d at 249 (citing *Zadeh*, 928 F.3d at 466).   But even operating under these assumptions, the Fifth Circuit "held that the statutory scheme of the [Texas Medical Board's] inspection authority lacked sufficient limits on the discretion of the Board and was therefore not a proper substitute for a warrant." *Morgan*, 969 F.3d at 249 (citing *Zadeh*, 928 F.3d at 468).

Chapman points to both *Cotropia I* and *Morgan* as supporting her qualified immunity defense. (Dkt. No. 112 at 13–20).   As she puts it, it was not clearly established in 2013 that it is unconstitutional for a Texas Medical Board agent to execute an *instanter* subpoena without a warrant, consent, and pre-compliance review.   (*Id.* at 16–17); (Dkt. No. 122 at 3–4).   But the Fifth Circuit's analysis in *Morgan* undermines Chapman's case for qualified immunity.   *See Morgan*, 969 F.3d at 247–50.

Before remand, the Fifth Circuit specifically concluded: "Neither the closely regulated industry holding nor the pretextual search analysis would stop Morgan's claims."   *Id.* at 249.   In doing so, the Fifth Circuit characterized *Zadeh* as awarding "qualified immunity because the law of *instanter* searches of closely regulated *pain*

24

*management clinics* was unclear." *Id.* (citing *Zadeh*, 928 F.3d at 466) (emphasis added).   In this case, by contrast, Morgan alleges that he "was *not* operating a pain management clinic." *Id.* (emphasis in original); *see also* (Dkt. No. 110 at 2–4 ¶¶ 10–12, 18–21) (alleging that characteristics of a "pill mill" are not descriptive of Morgan's facility).   Summing up, the Fifth Circuit concluded: "Because Morgan was not operating a pain management clinic, the qualified immunity available to the defendants in *Zadeh* would be inapplicable here." *Morgan*, 969 F.3d at 249.   The implication is that because Morgan plausibly alleges that he was *not* operating a pain management clinic, Chapman's authority to search must revert back to the baseline constitutional rule governing administrative searches.

That rule governing administrative searches is straightforward and comports with the core purpose of the Fourth Amendment: "absent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *Patel*, 576 U.S. at 420, 135 S.Ct. at 2452.   This makes sense.   After all, other than a few exceptions, "warrantless searches are per se unreasonable under the Fourth Amendment." *City of Ontario*, 560 U.S. at 760, 130 S.Ct. at 2630 (internal quotation marks omitted).

Morgan's allegations track these well-established constitutional principles. Indeed, the entire premise of Morgan's complaint is that Chapman searched Morgan's medical facilities without consent and without an exigency using an administrative search in the form of an *instanter* subpoena.   But that *instanter* subpoena, which

demanded immediate compliance, did not afford an opportunity to obtain precompliance review before a neutral decisionmaker.

Thus, like the plaintiff in *Cotropia I*, Morgan has plausibly alleged that Chapman "violated the clearly established right to an opportunity to obtain precompliance review of an administrative subpoena before a neutral decisionmaker." *Cotropia I*, 721 F. App'x at 357 (citing *See v. City of Seattle*, 387 U.S. 541, 545, 87 S.Ct. 1737, 1740, 18 L.Ed.2d 943 (1967); *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415, 104 S.Ct. 769, 773, 78 L.Ed.2d 567 (1984)); *see also Advanced Bldg. & Fabrication, Inc. v. Cal. Highway Patrol*, 918 F.3d 654, 656 (9th Cir. 2019) (affirming the district court's denial of qualified immunity because, among other reasons, the administrative-search exception did not apply); *Bruce v. Beary*, 498 F.3d 1232, 1250 (11th Cir. 2007) (reversing the district court's grant of qualified immunity because "it was clearly established that an administrative search must be reasonable under the circumstances and may not exceed its limited scope").

In addition to contending that the use of the *instanter* subpoena was unconstitutional as an administrative search, Morgan advances another theory: pretext. On this theory, the Fifth Circuit already recognized what Chapman now ignores: "A search is not really administrative if it is used solely to find evidence of criminal wrongdoing." *Morgan*, 969 F.3d at 249. "In the law of administrative searches, one principle emerges with unusual clarity and unanimous acceptance: the government may not use an administrative inspection scheme to search for criminal violations." *Burger*, 482 U.S. at 724, 107 S.Ct. at 2655 (Brennan, J., dissenting) (collecting cases); *see also Riggs v. Gibbs*, 923 F.3d 518, 524 (8th Cir. 2019) (noting the officers' concession that the

administrative search exception to the Fourth Amendment "does not apply when the administrative search is a mere subterfuge for criminal investigation"). Yet Chapman's use of the instanter *subpoena* to search for a criminal violation is precisely what Morgan takes issue with.

Start with the purpose of Chapman's search, which was to determine whether Morgan's family medicine practice was an illegal "pill mill." (Dkt. No. 110 at 4 ¶ 22). Before the search, Chapman coordinated with Kopacz and other law enforcement agents for the purpose of obtaining records to support a criminal investigation. (*Id.* at 5 ¶ 27, 11 ¶¶ 56–58, 19–20 ¶¶ 96–97, 20 ¶¶ 101–02, 21 ¶ 107). When completing the six-hour search—conducted without Morgan's consent—Chapman and other officials seized documents and searched the entire medical facility. (*Id.* at 8 ¶¶ 42–43, 19–20 ¶¶ 97–98). In an astonishing display of authority during the search, Chapman said, "We're the medical board, we can do whatever we want." (*Id.* at 8 ¶ 42). The state court disagreed. It concluded that the Texas Medical Board's interest in executing the *instanter* subpoena "was not a legitimate pursuit of its administrative authority but an exercise to circumvent both the Texas and US Constitutions' requirement for a warrant." (*Id.* at 11 ¶ 58). And after the search, Chapman used the seized documents to create an investigative report that was ultimately used as "the sole evidence relied upon" to prosecute Morgan. (*Id.* at 9 ¶¶ 47–48, 13 ¶ 66).

Despite the clarity of Morgan's factual allegations, Chapman argues that there was no pretext because she was investigating whether Morgan was operating a pain management clinic. (Dkt. No. 112 at 14–15). In support, Chapman points to *Cotropia II.*

(*Id.*).  *Cotropia II*, which was issued two months after this case was remanded, emphasized that the relevant pretext inquiry is "whether the search that occurred was under a scheme serving an administrative purpose."  978 F.3d at 290 (quoting *Zadeh*, 928 F.3d at 471) (internal quotation marks omitted).  In this way, Chapman and the Texas Medical Board can permissibly "address a major social problem *both* by way of an administrative scheme *and* through penal sanctions."  *Cotropia II*, 978 F.3d at 290 (quoting *Burger*, 482 U.S. at 712, 107 S.Ct. at 2649) (emphases in original) (internal quotation marks omitted).  In *Cotropia II*, the Fifth Circuit noted that the Texas Medical Board "had received a complaint that Cotropia was operating an unregistered" pain management clinic and had his license revoked.  978 F.3d at 290.  Thus, the Fifth Circuit agreed that there was no pretext.  *Id.* at 289–90.

Here, by contrast, there are no allegations that Morgan's purpose was anything other than finding evidence of criminal wrongdoing.  To the contrary, the sole purpose was to obtain records to support a criminal investigation.  (Dkt. No. 110 at 5 ¶ 27, 11 ¶¶ 56–58, 19–20 ¶¶ 96–97, 20 ¶¶ 101–02, 21 ¶ 107).  As the Supreme Court explained, "actual motivations" matter when analyzing administrative search cases.  *Ashcroft v. al-Kidd*, 563 U.S. 731, 736, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011).

Chapman disagrees that her purpose was a criminal investigation citing two factual allegations.  (Dkt. No. 112 at 14–15).  The first is that Chapman "served as an investigator involving [Morgan's] alleged operation of a 'pill mill' at" the family medical practice.  (Dkt. No. 110 at 3 ¶ 16).  The second allegation is that there is not a "record of any complaints whatsoever made against [Morgan] or his practice sites to the TMB by

28

any individual . . . that warranted [Chapman's] investigation." (*Id.* at 4 ¶ 23). Viewed in a light most favorable to Morgan, neither of these allegations can fairly be stretched as far as Chapman suggests. Morgan's alleged operation of a pill mill is not a concession that Chapman's purpose of the search was both criminal and administrative. Such a reading ignores the specific and categorical allegations of the sole purpose—a criminal investigation—elsewhere in the live complaint. And it ignores the thrust of the complaint when read as a whole. *See Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 506 (5th Cir. 2011). Morgan, therefore, plausibly alleges a pretext theory.

The Fifth Circuit acknowledged as much when it distinguished this case from the pretext analysis in *Zadeh*. In *Zadeh*, the Fifth Circuit "concluded that the searches were not pretext for a criminal investigation because there was no evidence that the 'investigation resulted in a criminal prosecution' and because the [Texas Medical Board] took 'subsequent administrative action against' the physician." *Morgan*, 969 F.3d at 249 (quoting *Zadeh*, 928 F.3d 471–72). In contrast, "neither of those two facts are present" in this case. *Morgan*, 969 F.3d at 249. Instead, Chapman's "search *did* result in a criminal prosecution, and [the Texas Medical Board] did *not* take any subsequent administrative action against Morgan." *Id.* (emphasis in original). Unlike in *Zadeh*, then, Morgan plausibly alleges that Chapman's search of the medical facilities was pretextual because it was designed to uncover evidence of criminality. *See id.*

This case is also unlike *Cotropia*, where the magistrate judge concluded that the plaintiff "failed to support his pretext argument with relevant facts or applicable

caselaw." 2019 WL 4346500, at *6. The summary-judgment evidence there did not indicate that Chapman's search "was solely to investigate a crime." *Id.* Instead, the evidence showed that Chapman completed the search to determine whether Cotropia "was practicing medicine after his license had been suspended, a legitimate administrative purpose." *Id.* The Fifth Circuit agreed, finding there was a proper administrative purpose for the search because the Texas Medical Board "received a complaint that Cotropia was operating an unregistered" pain management clinic and had his license revoked at the time of the search. *Cotropia II*, 978 F.3d 289–90.

Here, by contrast, Morgan's burden at the Rule 12(b)(6) stage is plausibly *alleging* a pretext theory—not showing evidence of pretext. *See Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. Morgan's allegations may turn out to be unsubstantiated at the next stage of litigation, but that is a question reserved for summary judgment. *Cotropia* is also distinguishable because, unlike in that case, there are no factual allegations that Chapman had an administrative purpose for the search. Instead, Morgan's factual allegations detail that Chapman's sole purpose was to investigate Morgan's alleged criminal wrongdoing. Notwithstanding Chapman's arguments, Morgan has properly pleaded a pretext theory.[6]

---

[6] To be sure, the Fifth Circuit did not definitively hold that Morgan's newly amended claims would survive qualified immunity. Instead, it contemplated that the claims *might* have merit *if* properly asserted after remand. *See Morgan*, 969 F.3d at 248 ("If adding these claims would be futile on the merits, we will not remand for efficiency's sake . . . . But, if these claims might have merit if added-on-amendment, we will remand to the district court for a full determination of whether leave to amend is proper."). But the Fifth Circuit's reasoning in concluding that it would not "be futile for Morgan to add a Fourth Amendment claim for an unreasonable search," *id.* at 249, applies when analyzing Morgan's live complaint.

In the end, Morgan's task in "seeking to overcome a motion to dismiss because of qualified immunity or for failing to state a claim [is to] plead facts that allow the court to draw the reasonable inference that the defendant is liable for the harm alleged." *Bevill v. Fletcher*, 26 F.4th 270, 274 (5th Cir. 2022). At least at this stage, Morgan has done just that. The Court holds that Chapman is not entitled to qualified immunity on the unreasonable search claim.[7]

### b.   Unreasonable Seizure

Morgan also raises two claims under the Fourth Amendment for unreasonable seizure: one against Chapman and the other against Kopacz. (Dkt. No. 110 at 17–19, 23–25). Again, only Chapman raises qualified immunity, contending that Morgan fails to carry his burden as to the clearly established prong because he does not cite an analogous case and defines the conduct too broadly. (Dkt. No. 112 at 12–13); (Dkt. No. 122 at 2). Chapman does not argue that her conduct was constitutional. In response, Morgan points to *Winfrey*. (Dkt. No. 119 at 10). The Court agrees with Chapman.

### i.   Constitutional Violation

Before remand, the Fifth Circuit considered whether any unreasonable seizure claim would be futile. *Morgan*, 969 F.3d at 249–50. It first described *Winfrey* as holding "that an unlawful seizure claim was cognizable and qualified immunity did not apply where a plaintiff 'was wrongfully arrested due to the knowing or reckless misstatements

---

[7]    Although unsuccessful at the Rule 12(b)(6) stage, Chapman can still show that she is entitled to qualified immunity. *See Sims v. Griffin*, 35 F.4th 945, 952 n.24 (5th Cir. 2022) ("Qualified immunity remains a live issue for trial.").

and omissions' in a law enforcement officer's affidavits." *Id.* at 249 (quoting *Winfrey*, 901 F.3d at 492). The unlawful seizure claim was cognizable as malicious prosecution under the Fourth Amendment when the "facts that follow the state tort of malicious prosecution also constitute an illegal seizure." *Morgan*, 969 F.3d at 250 (citing *Winfrey*, 901 F.3d at 492). That is the case here. *See supra* III.A.a.

Recall Morgan's allegations that Chapman and Kopacz knew that Morgan was innocent. (Dkt. No. 110 at 18 ¶ 90, 24 ¶ 118). Morgan claims Chapman and Kopacz made material misstatements and omissions of fact and further "withheld exculpatory evidence, to facilitate the prosecution." (*Id.* at 18 ¶ 91, 24 ¶ 119). These knowing or reckless misstatements were made in sworn testimony in support of Morgan's prosecution. (*Id.* at 17–18 ¶ 89, 24 ¶ 117). The documents and investigative report prepared by both Kopacz and Chapman were also "the sole evidence relied upon" to prosecute Morgan. (*Id.* at 9 ¶¶ 47–48, 13 ¶ 66, 24 ¶ 120).

But Morgan offers more than a barebones recitation of the elements of a malicious prosecution claim. The claim moves from the realm of possible to plausible when Morgan details the specific misstatements and omissions. Chapman prepared a "knowingly inaccurate compiled report." (*Id.* at 23 ¶ 113). That report was based on only one month of Morgan's prescriptions. (*Id.* at 23 ¶ 114). Chapman also "untruthfully stated under oath that an unregistered pain management clinic is a pill mill" even though the characteristics of a pill mill were not present in Morgan's medical practices. (*Id.* at 4 ¶¶ 19–20). Indeed, Chapman did not have any record of complaints against Morgan or his family medicine practices that would warrant an investigation. (*Id.* at 4 ¶ 23). Yet

32

Chapman completed the report without a preliminary investigation, which would have refuted her initial impression of Morgan's practices.  (*Id.* at 4 ¶ 21).  Morgan even details Chapman's other false and misleading practices.  (*Id.* at 13 ¶¶ 67–70).

Chapman's misstatements and omissions continued during the state court suppression hearing.  Chapman, for example, "made numerous false statements" that were designed to portray Morgan's family medicine practices as "illegitimate," including by overstating the number of patients that were seen on a daily basis and by claiming that there were no complete patient medical records at one of the facilities—even though she knew those records were electronically accessible.  (*Id.* at 9–10 ¶ 52).  Chapman also falsely claimed that she did not seize medical records that were not contained in the *instanter* subpoena, a claim that is contradicted by the Texas Medical Board's log of records.  (*Id.* at 10 ¶ 53).  Perhaps most startling is the allegation that Chapman concealed the unlawful seizure by duplicating an affidavit.  (*Id.*).  These allegations are supported by the state court's findings, including that Morgan did not legitimately use her administrative authority but instead circumvented the Texas and U.S. Constitutions.  (*Id.* at 11 ¶ 58).  This should not be a surprise, according to Morgan.  He alleges that Chapman has also used fabricated evidence in another court.  (*Id.* at 14 ¶ 72).

Together, these allegations plausibly allege a Fourth Amendment unreasonable seizure violation under a malicious prosecution theory.  *See Thompson*, 596 U.S. at ____, 142 S.Ct. at 1335; *Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003) (en banc).

ii.      Clearly Established Law

Nonetheless, the Court cannot conclude that Morgan defeats Chapman's invocation of qualified immunity because  Morgan has not "identified a single precedent finding a Fourth Amendment violation under similar circumstances."  *See City of Tahlequah v. Bond*, _____ U.S. _____, _____, 142 S.Ct. 9, 12, 211 L.Ed.2d 170 (2021) (per curiam). And it is unlikely that he could have.  Malicious prosecution jurisprudence has lacked a firm foundation as recently as this year, *see Thompson*, 596 U.S. _____, 142 S.Ct. 1332, not to mention 2013.  While the Supreme Court recently recognized a cognizable malicious prosecution claim as grounded in the Fourth Amendment, Justice Alito explained that the Court "create[d] a chimera of a constitutional tort by stitching together elements taken from two very different claims: a Fourth Amendment unreasonable seizure claim and a common-law malicious-prosecution claim."  *Id.* at _____, 142 S.Ct. at 1341 (Alito, J., dissenting).

*Winfrey*, as the Fifth Circuit recognized, is undoubtedly relevant.  *See Morgan*, 969 F.3d at 249–250.  But it is not dispositive for the purpose of qualified immunity.  As *Winfrey* explained, it is has been clearly established since 1978 "that a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes 'a false statement knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'"  *Winfrey*, 901 F.3d at 494 (quoting *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978)).  But Morgan's allegations do not discuss a false statement by Chapman in an affidavit and in support of a warrant.  *See id.*  Instead, every indication is

34

that Morgan was seized after being indicted by a grand jury.  *See* (Dkt. No. 110 at 9 ¶ 49, 23 ¶ 115).

The Court concludes that Morgan has not carried his burden of defeating qualified immunity regarding his Fourth Amendment unreasonable seizure claim against Chapman.  As a result, the Court dismisses this claim.

### 2.   Fourteenth Amendment

Morgan's final claim is solely against Chapman under the Due Process Clause of the Fourteenth Amendment.  Chapman again raises qualified immunity.  This time, Chapman does not dispute that the law was clearly established.  Instead, Chapman argues that Morgan has failed to show a constitutional violation because his allegations are "insufficiently specific and granular."  (Dkt. No. 122 at 2–3); *see also* (Dkt. No. 112 at 17).  He claims that "Constitutional rights are not interchangeable," especially when the source of the purported violation is under Substantive Due Process.  (Dkt. No. 112 at 18–20).  Morgan disagrees, recounting his specific factual allegations.  (Dkt. No. 119 at 12). He then argues that the Fifth Circuit already determined his Fourteenth Amendment claim would not be futile.  (*Id.* at 12–13).   The Court largely agrees with Morgan.

### a.   Clearly established law

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. XIV, cl. 1. The Fifth Circuit has recognized "a due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person."  *Morgan*, 969 F.3d at 250 (internal quotation marks omitted).  Before remand, the Fifth Circuit

determined that the recognition of this due process right remains binding precedent.  *Id.*
As such, the Fifth Circuit held that Morgan's fabricated evidence claim would not be
futile.  *Id.*

The source of the due process right is *Cole v. Carson*—a case the Fifth Circuit
described as "on point."   *Id.*   In *Cole*, the Fifth Circuit considered whether a law
enforcement officer violated the plaintiff's "clearly established due process rights when
he allegedly lied to investigators to secure a false charge of aggravated assault."  *Cole v.
Carson*, 802 F.3d 752, 765 (5th Cir. 2015), *cert. granted, judgment vacated sub nom. Hunter v.
Cole*, ____ U.S. ____, 137 S.Ct. 497, 196 L.Ed.2d 397 (2016), *and opinion reinstated in part*, 905
F.3d 334 (5th Cir. 2018) (en banc).  Regarding the alleged constitutional violation, the Fifth
Circuit held: "Where police intentionally fabricate evidence and successfully get someone
falsely charged with a felony as cover for their colleagues' actions, and the Fourth
Amendment is unavailing, there may be a due process violation."  *Id.* at 773.

Turning to the clearly established prong, the Fifth Circuit concluded that, "[b]y
2010, no reasonable law enforcement officer would have thought it permissible to frame
somebody for a crime he or she did not commit."   *Id.* (internal quotations omitted); *see
also Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)
("[T]he right to due process of law is quite clearly established by the Due Process Clause,
and thus there is a sense in which any action that violates that Clause (no matter how
unclear it may be that the particular action is a violation) violates a clearly established
right."); *Brown v. Miller*, 519 F.3d 231, 237 (5th Cir. 2008) ("[T]he right of criminal
defendants to be free from false or fabricated evidence was well settled by 1959 or

36

earlier."). While *Cole* has a complicated procedural history, its core "holding is binding Fifth Circuit precedent today." *Morgan*, 969 F.3d at 250. Thus, the law was clearly established in 2013—at the time of the alleged constitutional violation. It is no surprise, then, that Chapman does not contest the clearly established prong.

b.    <u>Constitutional Violation</u>

Chapman primarily takes issue with the plausibility of Morgan's claim under the Due Process Clause. But Morgan's factual allegations in support of this claim are both straightforward and plausible. Morgan alleges that Chapman "deliberately fabricat[ed] evidence and us[ed] it to frame and bring false charges against [him]." (Dkt. No. 110 at 25). As the lead investigator, Chapman "knowingly and deliberately compiled an inaccurate report tabulating all prescriptions issued for controlled substances by [Morgan]." (*Id.* at 25 ¶ 124). The "inaccurate calculations falsely inflated the percentage of prescriptions issued by [Morgan] for the category drugs, to over a majority of his patients." (*Id.* at 26 ¶ 125). The creation of "the knowingly inaccurate report based on only one month of [Morgan's] prescriptions" was the catalyst for Morgan's indictment, arrest, and prosecution for an alleged violation of Section 165.152 of the Texas Occupations Code.[8] (*Id.* at 26 ¶¶ 127–31). If Chapman would have included in her report certain information that was in her possession, it would have been clear that Morgan's family medicine practices were exempt from the statutory requirement to obtain certification for a pain management clinic. (*Id.* at 12–13 ¶¶ 64–70). As Morgan puts it,

_____

[8]    "A person commits an offense if the person practices medicine in this state in violation of this subtitle." Tex. Occ. Code § 165.152(a).

there would not have been a criminal prosecution but for Chapman's fabricated evidence. (*Id.* at 27 ¶ 135).   Notwithstanding Chapman's arguments to the contrary, these allegations state a plausible claim for fabricated evidence.

Chapman's only remaining argument is that the Fourteenth Amendment claim fails because Morgan also raises Fourth Amendment claims.  *Cole* once again provides guidance.  There, the Fifth Circuit explained that fabricated evidence and the associated harm "*may* be addressed through a Fourth Amendment challenge in many cases."  *Cole*, 802 F.3d at 772 (emphasis added).  Thus, "where there is no more specific constitutional protection available, the Fourteenth Amendment may offer protection."  *Id.*  A plausible reading of the Fifth Circuit's explanation is that courts should not permit a fabricated evidence claim under the Due Process Clause when the Fourth Amendment (or some other provision of the Constitution) provides an avenue for seeking relief for the same injury.

Here, Morgan asserts two claims under the Fourth Amendment.  But those Fourth Amendment claims arise from two separate injuries: a seizure and a search.  Recall that Chapman is entitled to qualified immunity as to the seizure claim.  *See supra* III.B.1.b. Morgan would, therefore, have no remedy for any injury associated with his prosecution *unless* the Fourteenth Amendment claim survives.  This is because the only surviving Fourth Amendment claim—unreasonable search—is entirely separate from the prosecution.

The recognition that Morgan's unreasonable search and fabricated evidence claims are distinct is well supported by precedent.  As the Supreme Court explained:

"Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands.  Where such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's 'dominant' character. Rather, we examine each constitutional provision in turn."  *Soldal v. Cook Cnty, Ill.*, 506 U.S. 56, 70, 113 S.Ct. 538, 548, 121 L.Ed.2d 450 (1992); *see also McDonough*, ____ U.S. at____ n.2, 139 S.Ct. at 2155 n.2 (quoting *Soldal* with approval).

This case, then, is similar to *Castellano*, where the Fifth Circuit "found that a Fourth Amendment violation had been alleged with regard to [the plaintiff's] pretrial seizure, *and* a Fourteenth Amendment due process violation was pled with regard to the knowing use of fabricated evidence and perjury at trial."  *Cole*, 802 F.3d at 767 (citing *Castellano*, 352 F.3d at 953–55, 960) (emphasis added).  In that case, pretrial seizure and fabricated evidence were two separate incidents with two separate injuries.  *See id.*  With these principles in mind, Chapman offers no discernable basis for collapsing the two separate injuries into one constitutional claim simply because the initial search eventually resulted in Morgan's seizure.  *See Soldal*, 506 U.S. at 70, 113 S.Ct. at 548; *see also Archbold-Garrett v. New Orleans City*, 893 F.3d 318, 325 n.4 (5th Cir. 2018) (noting "that the availability of a takings claim does not necessarily subsume a plaintiff's ability to pursue a seizure claim as well").

*** 

In sum, Chapman does not raise a meritorious basis for dismissing the Due Process Claim.

IV.     **CONCLUSION**

The Court **DENIES** John Kopacz's Motion to Dismiss.  (Dkt. No. 111).

The Court further **GRANTS in part** and **DENIES in part** Mary Chapman's Motion to Dismiss.  (Dkt. No. 112).  The Court **DISMISSES WITH PREJUDICE** Count IV of the Third Amended Complaint on the basis of qualified immunity.  *See* (Dkt. No. 110 at 23–25).  The Court **DENIES** all other requested relief.

Finally, the Court **ORDERS** the Parties to submit a proposed amended scheduling order within 14 days of the date of this Memorandum Opinion and Order.  The Court intends to expeditiously resolve this case, which has been on file since January 2017.

It is SO ORDERED.

Signed on September 20, 2022.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**